UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| RONNIE LEE MCCALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:18-CV-00098-JRG-CRW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct His Sentence [Doc. 1], Petitioner's Pro Se Memorandum in Support of the Instant Petitioner's Motion Pursuant to 28 U.S.C. § 2255 [Doc. 2], and Petitioner's Motion for Summary Judgement [sic]/Motion for Clarification [Doc. 13]. For the reasons herein, the Court will deny Petitioner's motions.

## I.    BACKGROUND

In 2011, Ronnie and Connie McCall had custody over four minor children, and David Berry, the manager of a local market, asked the McCalls whether they would allow their children to do "modeling" for him in exchange for cash. [Sixth Circuit Op., Doc. 201, at 1, No. 2:13-CR-00092]. After agreeing to this proposition, the McCalls, on dozens of occasions, sent their girls to Mr. Berry's apartment, where Mr. Berry took nude photos of them and raped them. [*Id.* at 1–2]. For roughly eighteen months, their children endured Mr. Berry's abuse, and during this timeframe, the McCalls—while knowing that Mr. Berry was taking nude photos and having sex with their children—gave him permission to take their oldest daughter, T.G., on a weekend trip to Myrtle Beach, South Carolina. [*Id.* at 2]. In Myrtle Beach, Mr. Berry, as he had done on nearly

forty other occasions, took nude photos of T.G. and had sex with her. [*Id.*]. Afterwards, Mr. Berry gave $800 to T.G., who then surrendered the money to Mr. McCall. [*Id.*]. Later, T.G. alerted authorities about Mr. Berry's abuse, and after searching his apartment, they discovered condoms, lubrication, a Kodak Easyshare Camera, and more than 300 images of child pornography on his computer. [First Trial Tr., Doc. 197, at 65:13–19, 88:15–21, No. 2:13-CR-00092]. Mr. Berry committed suicide the next day, and after the McCalls attempted to flee to Canada, authorities apprehended them. [Sixth Circuit Op. at 2].

A federal jury later convicted Mr. McCall on four counts: (1) selling a child by a parent for purposes of producing child pornography, in violation of 18 U.S.C. § 2251A; (2) producing child pornography, in violation of 18 U.S.C. § 2251(a); (3) producing child pornography by a parent in violation of 18 U.S.C. § 2251(b); and (4) using a facility of interstate commerce to coerce a child to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). [Indictment, Doc. 3, at 1–3, No. 2:13-CR-00092; Jury Verdict Form, Doc. 145, at 1–3, No. 2:13-CR-00092]. On June 6, 2016, the Court sentenced Mr. McCall to a life term of imprisonment, and it entered judgment against him on June 20, 2016. [J., Doc. 182, at 1–4, No. 2:13-CR-00092].

Mr. McCall appealed his conviction—only as it related to § 2251A—and his sentence, but the Sixth Circuit Court of Appeals rejected his appeal, and on July 14, 2017, it issued its mandate. [Mandate, Doc. 202, No. 2:13-CR-00092]. On June 18, 2018, Mr. McCall filed a petition to vacate, set aside, or correct his sentence under § 2255.[1] In his petition, he collaterally attacks his conviction and sentence on multiple grounds, arguing that (1) the United States lacked

---

[1] When a defendant files a timely direct appeal of his judgment, as Mr. McCall did in this case, § 2255's one-year statute of limitations begins to run "upon the expiration of the 90-day period in which the defendant could have petitioned for certiorari to the Supreme Court, even when no certiorari petition has been filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 426–27 (6th Cir. 2004) (citing *Clay v. United States*, 537 U.S. 522, 532 (2003)). Mr. McCall's § 2255 petition is therefore timely.

2

sufficient evidence to prove his guilt under §§ 2251(a), 2251(b), and 2422(b); (2) § 2251(a) is unconstitutional; and (3) his trial counsel and appellate counsel were ineffective. [Pet. at 4–10].[2] After Mr. McCall filed his § 2255 petition, the Court ordered a response from the United States. [Order, Doc. 4, at 1]. Although the United States, in 2018, twice moved for an extension of time in which to file a response—both of which the Court granted—it did not file one until roughly a month ago. [Order Granting Extension, Doc. 8., at 1; Second Order Granting Extension, Doc. 10, at 1; United States' Resp., Doc. 21].[3]

Recently, the Court ordered Mr. McCall to show cause as to why the doctrine of procedural default does not preclude it from reaching the merits of his claims. [Show-Cause Order, Doc. 17, at 1]. Mr. McCall has responded to the Court's show-cause order. [Pet'r's Resp., Doc. 20]. Having carefully reviewed Mr. McCall's response and his petition, the Court is now prepared to rule on his claims.

## II.  STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it

---

[2] Mr. McCall also requests the appointment of counsel to aid him here in these § 2255 proceedings, [Pet'r's Mot. Summ. J. at 1], but the Court declines to accommodate his request. For "prisoners who indicate, without more, that they wish to seek post-conviction relief," as Mr. McCall does here, the onus to formulate "a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system." *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today." (citing *Avery*, 393 U.S. at 488)).

[3] According to the United States, "the enactment of the First Step Act and the shutdown of the federal government due to a lapse in appropriations" caused it to overlook the Court's deadline for the filing of a response. [United States' Resp. at 2 n.2]. While these occurrences might have compelled the Court to excuse the United States' failure to meet this deadline, the United States never moved for leave before filing its belated response. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . . on motion made after the time has expired if the party failed to act because of excusable neglect.").

3

concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing she is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," she will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

4

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

## III. ANALYSIS

The Court begins its analysis by addressing Mr. McCall's motion for summary judgment, in which he argues that the United States' failure to timely respond to his petition entitles him to a walkover: "[T]he instant Petitioner's Motion pursuant to 28 U.S.C. § 2255 is wholly and truly uncontested. As such, the Court must . . . enter a judgment in favor of the Petitioner." [Pet'r's Mot. Summ. J. at 1]. In his recently filed petition for writ of mandamus [Doc. 16], however, Mr. McCall maintains that he has now "realiz[ed]" a motion for summary judgment is "not a valid Motion under § 2255" and indicates that he has filed, in its place, a motion for default judgment.

[*Id.* at 5].[4] Without citing case law, Mr. McCall argues that "some courts have allowed the useage [sic] of [a motion for default judgment] in some circumstances in § 2255 motions." [*Id.*].

But this argument is not an accurate characterization of the law, at least not as the law applies to § 2255 proceedings in this circuit. *See United States v. Bawgus*, 782 F. App'x 408, 409–10 (6th Cir. 2019) ("[The petitioner] alternatively argues that the government's failure to respond to a district court order [requiring a response] . . . bars it from challenging his § 2255 relief. But whether the government appropriately responded to that order does not discharge [the petitioner's] burden to prove entitlement to habeas relief." (citations omitted)); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof. Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons[.]" (citations omitted)); *United States v. Mitchell*, No. 15-20609, 2019 WL 1931988, at *3 (E.D. Mich. Apr. 30, 2019) (stating that a "[d]efault judgment is not appropriate in habeas cases—and, by extension of reasoning, to § 2255 cases—'on the ground that state officials fail to file a timely response to a petition'" (quoting *Mahady v. Cason*, 222 F. Supp. 2d 918, 922 (E.D. Mich. 2002))); *see generally Davis v. United States*, 417 U.S. 333, 343 (1974) (stating that "§ 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); *Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other." (citing *Davis*, 417 U.S. at 343)).

---

[4] The Court, however, has received no motion for default judgment from Mr. McCall, and it is not part of the record. *See* [Sixth Circuit Order, Doc. 19, at 2 ("Although McCall seeks a ruling on his motion for default judgment, that motion is not reflected on the district court docket.")].

Similarly, Mr. McCall also asserts that the Court, in lieu of a response from the United States, "is *not* authorized to argue the Government's case against [him], just as the Court cannot argue [his] cases against the Government." [Pet'r's Mot. for Writ at 5]. But again, Mr. McCall, with this assertion, is angling for a default judgment, which is simply unavailable to him. And contrary to his belief, the Rules Governing § 2255 Proceedings do not necessarily require a response from the United States in the first place. *See* Rules Governing § 2255 Proceedings, Rule 5(a) ("The respondent is not required to answer the motion unless a judge so orders."); *see also Bawgus*, 782 F. App'x at 410 ("[W]hether the government appropriately responded to that order does not discharge [the petitioner's] burden to prove entitlement to habeas relief." (citations omitted)).

And in a similar vein, the Court has license to raise sua sponte the doctrine of procedural default now that it has provided Mr. McCall with an opportunity to address whether his claims must succumb to this doctrine. *See Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002) ("[T]his Court has held in a § 2255 context that it may sua sponte raise procedural default despite the Government's failure to defend on that ground." (citations omitted)); *see also Wells v. Warden, Belmont Corr. Inst.*, No. 18-3125, 2018 WL 3869276, at *2 (6th Cir. Apr. 30, 2018) ("[T]he district court did not err by considering the issue of procedural default sua sponte because it provided [the petitioner] the opportunity to address the issue[.]"); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) ("The main concern with raising procedural default sua sponte is that a petitioner not be disadvantaged without having had an opportunity to respond." (citation omitted)). The Court will therefore hold Mr. McCall to his burden, as the party pursuing relief under § 2255, despite the United States' lassitude in defending this case.

## A. Procedural Default

Under the doctrine of procedural default, a defendant who fails to raise an issue on direct appeal may not raise that issue in a § 2255 petition unless he can establish cause and prejudice to excuse his failure. *Huff v. United States*, 734 F.3d 600, 605–06 (6th Cir. 2013). The "hurdle" that a petitioner must vault to excuse procedural default is "intentionally high . . . for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (citation omitted). The element of cause requires "good cause" for the petitioner's failure to raise his claims on direct appeal, and the element of prejudice requires the petitioner to show that he "would suffer prejudice if unable to proceed" with those claims. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998)).

Rarely, a defendant who fails to establish cause and prejudice can still obtain review of his post-conviction claims if it is necessary to avoid a fundamental miscarriage of justice, as when a defendant is able to show his actual innocence by submitting new evidence to the Court. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *see Bousley*, 523 U.S. at 622–24 (stating that "'actual innocence' means factual innocence, not mere legal insufficiency" (citation omitted)); *see also McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (stating that the actual-innocence exception deals with a "severely confined category [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'" (quotation omitted)); *Jamison v. Collins*, 100 F. Supp. 2d 521, 533 (S.D. Ohio 1998) ("To demonstrate a 'fundamental miscarriage of justice,' a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent." (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986))).

In responding to the Court's show-cause order, Mr. McCall asserts that "[a]ll of [his] claims are exempt from such procedural default," but he offers the Court nothing beyond this conclusory assertion except a mere recitation of his claims. [Pet'r's Resp. at 1–4].[5] In addition, he neither argues in his response nor alleges in his petition that he has new evidence capable of establishing his actual innocence. Instead, he claims only that the evidence under which he was convicted was insufficient and that § 2251(a) is unconstitutional.

In failing to raise any appreciable argument as to cause and prejudice, Mr. McCall has procedurally defaulted on most of his claims—his claims that the United States lacked sufficient evidence to convict him under §§ 2251(a), 2251(b), and 2422(b) and his claim that § 2251(a) is unconstitutional, none of which he raised during his direct appeal. *See Simmons v. Schweitzer*, No. 16-4170, 2017 WL 4980159, at *2 (6th Cir. Apr. 5, 2017) ("[The petitioner] did not raise his sufficiency-of-the-evidence claim on direct appeal. Reasonable jurists could not disagree with the district court's conclusion that this claim is procedurally defaulted because [the petitioner] offers no colorable argument that cause and prejudice excuse his default, or that the failure to excuse his default would result in a fundamental miscarriage of justice."); *see Dretke*, 541 U.S. at 388 ("Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim[.]"); *cf. United States v. Israel*, Criminal Action No. 5:14-98-DCR-CJS; Civil Action No. 5:17-312-DCR-CJS, 2018 WL 3212071, at *5 (E.D. Ky. Feb. 12, 2018) ("As Defendant has not made any effort to show cause and actual

---

[5] Although Mr. McCall does argue that he "is obviously suffering the prejudice of conviction and loss of liberty," [Pet'r's Mem. at 8], he does not, with this argument, identify any prejudice apart from his baseline assertion that his conviction and sentence are unlawful, *see Scott v. Mitchell*, 209 F.3d 854, 872 (6th Cir. 2000) ("Of course, evaluating the merits to determine the applicability of procedural default is circular and undermines the federalism concerns behind the doctrine."); *Mario M. Trollinger v. Warden, S. Ohio Corr. Inst.*, No. 1:13–cv–667, 2015 WL 763967, at *4 (S.D. Ohio Feb. 23, 2015) ("[The petitioner] argues that the very fact that the evidence is insufficient itself satisfies the cause and prejudice requirement to excuse a procedural default. That reasoning is circular: a habeas petitioner must first overcome the procedural default before a habeas court can reach the merits of the insufficient evidence claim." (citation omitted)).

prejudice exist to excuse his procedural default, and Defendant has not satisfied the requirements of the actual innocence exception, Defendant's claim that §§ 841 and 846 are unconstitutional is procedurally defaulted.").[6]

But even if Mr. McCall did not procedurally default on these claims, they would still fail on the merits. The Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (citation omitted); *United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961) ("A Section 2255 proceeding cannot be used as a substitute for an appeal. The sufficiency of the evidence to prove the alleged offenses will not be reviewed in such a proceeding." (citations omitted)); *Mitchell v. United States*, Nos. 2:05-CV-274, 2:04-CR-02, 2007 WL 325762, at *3 (E.D. Tenn. Jan. 31, 2007) ("Section 2255 cannot be used to attack the sufficiency of the evidence by which a defendant is convicted, as that is an issue that can be raised only by direct appeal." (citing *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974))).

In addition, Mr. McCall's argument that § 2251(a) is unconstitutional is also without merit. Section 2251(a) states:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting

---

[6] Although Mr. McCall, in his response, does correctly point out that a petitioner can bring an ineffective assistance of counsel claim "whether or not the petitioner could have raised the claim on direct appeal," [Pet'r's Resp. at 1], the fact that he has asserted claims of ineffective assistance of counsel—which the Court will go on to address in this opinion—does not, without a viable argument of cause and prejudice, redeem his procedurally defaulted claims. *Edwards v. Carpenter*, 120 S. Ct. 1587, 1592 (2000).

10

interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Mr. McCall asserts that Congress, in enacting § 2251(a), "acted outside its own limited and enumerated powers under the Commerce Clause." [Pet'r's Mem. at 4].[7] More specifically, he argues that § 2251(a)'s plain language "does not require any actual product of child pornography images to exist" and that the Commerce Clause "does not provide *any* enumerated power to Congress to regulate crimes against children that are not in Commerce." [*Id.* at 4, 5]. According to Mr. McCall, the "only 'way'" a person can "'constitutionally' violate this statute is if they actually transport a minor across state lines," but the United States, he argues, presented no evidence to this effect at trial. [*Id.* at 6, 7].

Mr. McCall's challenge to § 2251(a) is an as-applied challenge, not a facial challenge, to its constitutionality under the Commerce Clause. *See United States v. Ray*, 189 F. App'x 436, 446–47 (6th Cir. 2006) ("[The defendant] argues that . . . [§] 2251(a) . . . [is] unconstitutional as applied to his case, because he argues that the federal criminalization of his activities exceeds Congress's Commerce Clause powers."); *United States v. Andrews*, 383 F.3d 374, 376–77 (6th Cir. 2004) ("[The defendant] does not argue that § 2251(b) is facially unconstitutional, instead contending that it is unconstitutional under the Commerce Clause as applied to him because his activities did not substantially relate to interstate commerce."); *see generally Seling v. Young*, 531 U.S. 250, 271 (2001) (Thomas, J., concurring) ("Typically an 'as-applied' challenge is a

---

[7] The Commerce Clause states: "The Congress shall have Power . . . . To regulate Commerce . . . among the several States[.]" U.S. Const., Art. I, § 8, cl. 3.

claim that a statute, '*by its own terms*, infringe[s] constitutional freedoms in the circumstances of [a] particular case.'" (quotation omitted)).

But in relying on the Commerce Clause to argue that his conduct was not criminal under § 2251(a) because it was merely local in nature—that is, because it did not involve the "transport [of ] a minor across state lines," [Pet'r's Mem. at 6]—Mr. McCall recycles an argument that the Sixth Circuit has rejected several times over. *See Ray*, 189 F. App'x at 447 ("We have held on at least three occasions that the federal child pornography statutes are constitutional as applied, even though the defendants in those cases engaged in behavior that was arguably local in nature."); *see also United States v. Bowers*, 594 F.3d 522, 524 (6th Cir. 2010) ("This case requires us to address the continued viability of an as-applied Commerce Clause challenge to a child-pornography conviction under 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(4)(B) . . . . [The defendant's] claim that his wholly intrastate, homemade child pornography falls outside the purview of congressional legislative power is meritless.").

Lastly, Mr. McCall argues that "§ 2251, et. seq." is unconstitutional because it violates the Ninth Amendment,[8] [Pet'r's Mem. at 12], but this argument, too, lacks merit because "the Ninth Amendment does not confer substantive rights" to litigants—that is, rights capable of offering redress to litigants, *Cooper Butt ex rel Q.T.R, v. Barr*, 954 F.3d 901, 908 (6th Cir. 2020) (citation omitted); *see generally Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) ("The ninth amendment 'was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution.'" (quotation omitted)); *cf. United States v. Hunt*, 419 F. App'x 949, 950 (11th Cir. 2011) ("[S]ince the Ninth Amendment does not

---

[8] The Ninth Amendment states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. IX.

provide an inherent right to self defense, 18 U.S.C. § 922(g)(1) cannot be unconstitutional on these grounds." (citation omitted)). In sum, Mr. McCall's claims—his claim that the United States lacked sufficient evidence to convict him under §§ 2251(a), 2251(b), and 2422(b) and his claim that § 2251(a) is unconstitutional—fail not only because they are procedurally defaulted but also because they are baseless.

### B. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a prisoner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process. *Id.*

A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either of the prongs of this test, his claim of ineffective assistance of counsel fails. *Id.* at 697. In other words, even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Id.* at 691 (citation omitted). In short, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S.

13

356, 371 (2010) (citations omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted)).

### 1. *Mr. McCall's First Claim of Ineffective Assistance*

Mr. McCall argues that his trial counsel was ineffective for failing to move for a directed verdict of acquittal on the § 2251(b) charge once the United States closed its evidence, and he maintains that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence as to this charge. [Pet. at 4; Pet'r's Mem. at 3]. Although Mr. McCall contends that his trial counsel had a "duty to move for a dismissal of that Count after the Government rested" and "[t]here is no reasonable reason why counsel did not enter such a motion," [Pet'r's Mem. at 3], he overlooks the fact that his counsel *did* in fact move for acquittal under Federal Rule of Criminal Procedure 29 once the United States rested its case:

Ms. Smith: The United States rests, Your Honor. Thank you.

. . . .

The Court: All right. Is there anything we need to take up before we leave today?

Mr. Sharp: Your Honor, I would have an oral motion for a Rule 29 judgment of acquittal. I would argue that the evidence as presented is insufficient to support a conviction in this matter; that the fact witnesses have been too inconsistent with

14

each other; and that a reasonable jury would not be able to find beyond a reasonable doubt guilt on any of the counts as to Mr. McCall.

[Second Trial Tr., Doc. 198, at 195:4–5, 196:5–13, No. 2:13-CR-00092]. Mr. McCall's claim of ineffective assistance of counsel therefore fails before it can even cross the threshold of the *Strickland* test. *See Armstrong v. United States*, Cv. No. 2:12-cv-02980-JPM-dkv, Cr. No. 2:09-cr-20477-JPM-1, 2016 WL 1261169, at \*12 (W.D. Tenn. Mar. 30, 2016) ("As is evident, [the petitioner's] counsel did move for a judgment of acquittal on the precise basis that [the petitioner] asserts he should have done so. Accordingly, [the petitioner] cannot show that his counsel's performance was deficient or prejudicial in this regard.").

As for Mr. McCall's claim that his appellate counsel was ineffective, this claim, though it too is without merit, demands a more careful analysis than his sister claim regarding the alleged ineffectiveness of his trial counsel. "A defendant is entitled to effective assistance of counsel on his first appeal as a matter of right," *Lewis v. United States*, No. 98-6140, 1999 WL 623350, at \*3 (6th Cir. Aug. 9, 1999) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)), and the *Strickland* test governs claims of ineffective assistance of appellate counsel, *Smith v. Robbins*, 528 U.S. 259, 285 (2000). But "there can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999); *see Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) ("In relation to appellate counsel, the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal. (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983))).

In deciding whether Mr. McCall's appellate counsel was ineffective, the Court's first task, therefore, is to assess the merits of the claim that his appellate counsel did not raise on appeal—that is, the claim that the evidence was insufficient to sustain his conviction under § 2251(b). *See Alder v. Burt*, 240 F. Supp. 2d 651, 667 (E.D. Mich. 2003) ("[T]o determine

15

whether petitioner received ineffective assistance of appellate counsel, this Court must first examine the merits of the claims which appellate counsel might have presented in petitioner's direct appeal, but failed to do so."); *see also Mapes*, 178 F.3d at 413–14 (stating that, if appellate counsel fails to raise issues that have merit, a district court then engages in the two-pronged *Strickland* analysis of constitutionally deficient performance and prejudice); *cf. Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (stating that to resolve the petitioner's claim of ineffective assistance of appellate counsel, "we must, 'ironically,' consider the merits of th[e] claim" that petitioner's appellate counsel failed to raise a viable issue on direct appeal).

In considering a defendant's claim that the evidence is insufficient to support his conviction, the Court "do[es] not weigh the evidence, consider the credibility of witnesses or substitute [its] judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) (citation omitted). Instead, the Court, after viewing the evidence in the light most favorable to the United States and drawing all reasonable inferences in the United States' favor, determines only whether *any* rational juror could have found proof of the defendant's guilt beyond a reasonable doubt. *United States v. M/G Transp. Servs. Inc.*, 173 F.3d 584, 589 (6th Cir. 1999); *United States v. Winston*, 37 F.3d 235, 238 (6th Cir. 1994). A juror has "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts,'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quotation omitted), and "[c]ircumstantial evidence alone is sufficient to sustain a conviction," *United States v. Ables*, 167 F.3d 1021, 1032 (6th Cir. 1999) (citation omitted). A defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (quotation omitted).

To obtain a conviction under § 2251(b), the United States has to prove four elements beyond a reasonable doubt:

> 1) defendant was the parent, legal guardian, or a person having custody or control over the victim; 2) the victim was a minor; 3) defendant knowingly permitted the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and 4) the visual depiction was transported in interstate commerce or the equipment used to create the depiction had been transported in interstate commerce.

*United States v. Lawrence*, 391 F. App'x 480, 483 (6th Cir. 2010). Mr. McCall argues that the evidence is insufficient to support his conviction under the fourth element. As to the fourth element, the Court instructed the jury as follows:

> For you to find the defendant guilty of this crime, you must decide if the government has proved each and every one of the following elements beyond a reasonable doubt . . . . Fourth, that the defendant knew or had reason to know that the visual depiction would be produced or transmitted using materials that were mailed, shipped or transported in or affecting interstate commerce by any means, including computer.

[Third Trial Tr., Doc. 199, at 111:9–12, 111:18–22, No. 2:13-CR-00092-JRG]. The Court also instructed the jury that "interstate commerce" is "the production or transmission of materials across a state line." [*Id.* at 108:12–14].

In arguing that the evidence is insufficient under the fourth element, Mr. McCall specifically homes in on Mr. Berry's Kodak Easyshare Camera, which was admitted into evidence at trial. [First Trial Tr. at 65:20–25, 66:1–5]. According to Special Agent Steve McFall, who testified at trial, Mr. Berry possibly used this camera to photograph the pornographic images of Mr. McCall's children and to upload those images to his computer via the camera's secure digital card. [*Id.* at 88:19–21, 93:17–25, 94:1–16]. Mr. McCall maintains that the evidence is insufficient to show that he knew or should have known that this camera had a nexus to interstate commerce because he "had no possible way to obtain knowledge of what, if any camera was

17

used." [Pet. at 4]. Along these lines, he contends that "no evidence was given to show that [he] was present in the same room" as the pornographic images of his children or "that he viewed any pictures." [*Id.*]. He also contends that "[i]t was never evidenced that any person showed, or reported to [him] if even a digital camera were [sic] used." [*Id.*].

Although the record might not contain direct evidence showing that Mr. McCall knew or should have known of the interstate nexus to the camera, the record does contain sufficient circumstantial evidence to this end. *See Ables*, 167 F.3d at 1032 (stating that "[c]ircumstantial evidence alone is sufficient to sustain a conviction" (citation omitted)). Mrs. McCall testified that her husband knew that Mr. Berry was taking nude photos of his oldest daughter, T.G. *See* [Second Trial Tr. at 113:6–7 (testifying that Mr. McCall said, "the girls are old enough to make up their own mind [about whether to pose nude]")]. T.G.'s own testimony corroborated her mother's testimony. *See* [*id.* at 38:20–24 (testifying that Mr. McCall instructed her, after they had left Mr. Berry's apartment for the first time, "not [to] tell anybody because it could like hurt the family and everything")]; *see generally Lawrence*, 391 F. App'x at 483 ("The testimony of the victim is, by itself, sufficient evidence for conviction." (citing *United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966))). T.G.'s younger sister, S.C., also testified that Mr. McCall was aware that Mr. Berry was taking nude photos:

> Q: Ronnie [McCall] just said, get in the truck and we're going over to David's house?
>
> A: Yeah. He said—well, he was like, he won't hurt you, but he'll just take photos of you.
>
> Q: Okay, and what kind of photos did you think they were?
>
> A: Well, I knew they would be naked pictures of me.
>
> Q: Why did you know that?

A: Because he told me.

Q: Ronnie told you that—

A: Yes.

Q: —the pictures would be naked?

A: Yes.

[Second Trial Tr. at 79:7–19]. In addition, the jury also heard testimony that Mr. McCall, with the knowledge that Mr. Berry had been taking nude photos of T.G., agreed to allow him to take T.G. on a weekend trip to Myrtle Beach in exchange for money. [*Id.* at 47:8–13, 49:5–9, 118:10–25].

In the light most favorable to the United States, all this evidence—the evidence showing that Mr. McCall allowed Mr. Berry to travel with T.G. across state lines even while knowing he had been taking nude photos of her—would enable any rational juror to conclude, beyond a reasonable doubt, that the evidence was sufficient to satisfy § 2251(b)'s interstate-commerce nexus. Specifically, any rational juror could reasonably infer that Mr. McCall knew or should have known that Mr. Berry would continue to produce nude photos of T.G. at the hotel in Myrtle Beach. *See United States v. McCall*, 699 F. App'x 452, 455 (6th Cir. 2017) ("[A] juror could conclude from the evidence presented that McCall knew Berry would create pornographic images of T.G. when they traveled there[.]"). In fact, T.G. testified that Mr. Berry did take more nude photos of her in Myrtle Beach. [Second Trial Tr. at 49:12–16]. Any rational juror, in exercising his or her broad discretion to draw inferences, could also reasonably infer that Mr. McCall should have known that Mr. Berry would capture those photos with the same equipment he had used to photograph T.G. at his Tennessee apartment—and for that matter, that he would return to Tennessee with those illicit photos. And lastly, any rational juror could reasonably infer

19

that this equipment was the Kodak Easyshare Camera that Special Agent McFall later discovered in Mr. Berry's apartment.

Having now considered the sufficiency of the evidence, the Court will shift its focus to Mr. McCall's claim of ineffective assistance of counsel, which, again, it must view through the prism of the two-part *Strickland* test. Under the first *Strickland* prong, Mr. McCall maintains that his appellate counsel's performance was constitutionally deficient because she did not contest the sufficiency of the evidence relating to § 2251(b)'s interstate-commerce nexus. [Pet. at 4]. Under the second *Strickland* prong, he contends that he has suffered prejudice because, by his tally, he "has to serve an additional 360 months" for his conviction under § 2251(b), [*id.*]— an argument that, generally speaking, is not without merit, *see Thelen*, 131 F. App'x at 65–66 (stating that "attorney errors resulting in increased prison time can constitute prejudice" (citing *Glover v. United States*, 531 U.S. 198, 203–04 (2001))).

The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citation omitted). As a general rule, "tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel." *Jennings v. United States*, No. 95-4113, 1996 WL 242014, at *1 (6th Cir. May 8, 1996) (citing *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990)). To the extent that this general rule constitutes a prevailing norm in the legal profession, Mr. McCall maintains that his appellate counsel's conduct fell below it. His appellate counsel, he argues, "knew or should have known that [sufficient] evidence was never presented at trial" because she "ha[d] the convenience of transcripts." [Pet'r's Mem. at 3]. He

20

insists that a challenge to the sufficiency of the evidence would have been "clearly meritorious." [*Id.*].

But having addressed the merits of Mr. McCall's claim here, the Court has dispelled any argument that it is "clearly meritorious." Against Mr. McCall's "heavy burden," *Prince*, 214 F.3d at 746 (quotation omitted), the evidence at trial, when the Court views it in the light most favorable to the United States, leaves Mr. McCall without a reasonable possibility of success on the merits—let alone a reasonable *probability*, *see Willis*, 351 F.3d at 745 (observing that, to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show "that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (quoting *Strickland*, 466 U.S. at 688, 694)); *see also Thelen*, 131 F. App'x at 63 ("A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West*, 73 F.3d at 84)).

Under these circumstances, Mr. McCall's appellate counsel's performance—or more specifically, his appellate counsel's decision not to challenge the sufficiency of the evidence relating to § 2251(b)'s interstate-commerce nexus—did not fall below an objective standard of reasonableness. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) ("Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" (quotation omitted)); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008) ("The mere fact that appellate counsel confined their appeal to [a small number of issues] does not establish that counsel were ineffective[.]"). Under the Sixth Amendment, Mr. McCall therefore fails to meet

his burden of demonstrating that he suffered an error of constitutional magnitude entitling him to the extraordinary remedy of § 2255 relief.[9]

### 2. Mr. McCall's Second Claim of Ineffective Assistance

Next, Mr. McCall argues that his trial counsel and appellate counsel were ineffective because they did not contest the sufficiency of the evidence as to his conviction under § 2251A. [Pet. at 5' Pet'r's Mem. at 11–14]. But again, this assertion is untrue as it pertains to his trial counsel, who did challenge the sufficiency of the evidence by moving for acquittal at trial. [Second Trial Tr. at 195:4–5, 196:5–13]. And as this same assertion applies to his appellate counsel, it is equally unavailing.

Section 2251A "makes it unlawful to sell or otherwise transfer custody or control of a minor 'with the knowledge that, as a consequence of the sale or transfer, the minor will be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct.'" *McCall*, 699 F. App'x at 454 (quoting § 2251A). Mr. McCall argues "there was *not* any evidence that the Defendant had 'knowledge' that the visual depiction would be of 'sexually explicit conduct.'" [Pet. at 9]. But this argument is the precise argument that Mr. McCall's appellate counsel raised before the Sixth Circuit. *See McCall*, 699 F. App'x at 454–55 ("On appeal, McCall argues that the government failed to show that he knew Berry would be taking sexually explicit videos or photos of T.G. when they arranged for that trip.").

---

[9] Because Mr. McCall's claim is purely legal in nature and requires resolution based on the trial record alone, *see Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (stating that a challenge to the sufficiency of the evidence is a "'legal' question" and includes no fact-finding role on a court's part (quotation omitted)), the Court has no need to hold an evidentiary hearing, *see Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (stating that an evidentiary hearing is unnecessary if "the record conclusively shows that the petitioner is entitled to no relief" (quotation omitted)); *see also Dempsey v. United States*, No. 18-5464, 2018 WL 5819501, at *1, *3 (6th Cir. Aug. 14, 2018) (affirming the district court's decision that the petitioner's claims "failed as a matter of law" and therefore did not warrant an evidentiary hearing).

In addressing this argument, the Sixth Circuit determined that it lacked merit. *Compare id.* at 455 ("Here, the government presented more than adequate evidence from which a rational juror could draw the reasonable inference that McCall knew Berry would make *pornographic* images of T.G. during the trip to Myrtle Beach." (emphasis added)), *with* 18 U.S.C. § 2256(8) (defining the term "child pornography" as photos containing "sexually explicit conduct"). Having already pursued this argument on appeal, Mr. McCall cannot now exhume it for reconsideration here in a § 2255 proceeding. *See Dado v. United States*, No. 17-2013, 2018 WL 1100279, at *2 (6th Cir. Feb. 15, 2018) ("Section 2255 motions may not be used to relitigate issues that have been considered by a United States Court of Appeals." (citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996))). Mr. McCall's claim is therefore not viable, and he is not entitled to § 2255 relief.

## C. Certificate of Appealability

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Mr. McCall to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claim on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having considered the merits of Mr. McCall's claims, in which he alleges several violations of the Constitution, the Court does not conclude that reasonable jurists would find its rejection of his claims debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. McCall.

## IV. CONCLUSION

As the petitioner under § 2255, Mr. McCall fails to meet his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in either a complete miscarriage of justice or an egregious error. Mr. McCall's Motion to Vacate, Set Aside or Correct His Sentence [Doc. 1] is therefore **DENIED**, and his Motion for Summary Judgement [sic]/Motion for Clarification [Doc. 13] is also **DENIED**. This case is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE